UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANICE SHORTER, | ) | CIVIL ACTION NO. 3:16-CV-1973 |
| *Personal Representative and Legal* | ) | |
| *Guardian for Donshay Sayles* | ) | (MANNION, D.J.) |
| Plaintiff | ) | |
| | ) | (ARBUCKLE, M.J.) |
| v. | ) | |
| | ) | |
| CHARLES E. SAMUELS, JR., *et al.*, | ) | |
| Defendants | ) | |

REPORT & RECOMMENDATION

I.  INTRODUCTION

Janice Shorter ("Plaintiff") is the personal representative and legal guardian for Donshay Sayles ("Sayles"). Sayles was a federal inmate at USP Big Sandy who was assaulted and is now in a vegetative state. Plaintiff, on behalf of Sayles, brought suit seeking monetary and equitable damages from BOP officials and the United States of America. This matter was referred to me to prepare a Report and Recommendation regarding Defendants' Motion for Judgment on the Pleadings (Doc. 48). For the reasons explained below, I RECOMMEND that Defendants' Motion for Judgment on the Pleadings be GRANTED in part and DENIED in part.

II.  BACKGROUND & PROCEDURAL HISTORY

Sayles was an African American federal inmate at USP Big Sandy. (Doc. 23, ¶¶ 3, 32). According to the Amended Complaint (Doc. 23), other inmates

threatened Sayles for not assisting them in a melee between rival groups within USP Big Sandy. *Id.* at ¶ 32. Because of these threats, Sayles requested to be transferred to protective custody in the Special Housing Unit ("SHU"). *Id.*

In March 2014, Sayles was transferred to USP Canaan. *Id.* at ¶ 42. Sayles felt his life was in danger and requested to be put in the SHU at USP Canaan. *Id.* Sayles believed that he was labeled a "snitch" and would be a target of violence from other inmates. *Id.* at ¶ 43. On March 18, 2014, Sayles was transferred to the SHU and was placed in a cell alone. *Id.* at ¶ 58.

On January 20, 2009, Joseph Wing ("Wing") pled guilty to four counts of mailing threatening communications. *Id.* at ¶ 71. Judgment was entered and sentence was imposed on May 12, 2009. *Id.* Wing was sent to USP Canaan. *Id.* at ¶ 73.

On May 6, 2014, Wing assaulted an African American inmate. *Id.* at ¶¶ 73-74. On May 7, 2014, Wing was placed in the SHU. *Id.* at ¶ 75. Wing proceeded to attack the other inmate in his cell—an African American inmate. *Id.* at ¶¶ 75-76. Wing told prison staff that he would not tolerate having an African American cellmate, and if the prison assigned him another African American cellmate, Wing would kill him. *Id.* at ¶ 84.

On May 16, 2014, Wing was placed in the SHU cell with Sayles. *Id.* at ¶ 88. Wing threatened and physically attacked Sayles. *Id.* at ¶ 92. Sayles pushed the

duress button in the cell. *Id.* According to the Amended Complaint (Doc. 23), prison staff did not respond to Sayles's duress call for twenty (20) minutes. *Id.* at ¶ 98. Prison staff observed Wing choking Sayles with a towel and striking Sayles head off of the floor. *Id.* According to the Amended Complaint (Doc 23), Wing told prison staff: "I'm not going to be celled with a black guy. I'm going to break his fucking neck. I'm going to kill this nigger." *Id.* at ¶ 100. Wing placed his knee on Sayles's back, continuing to choke him with the towel. *Id.* at ¶ 101. Prison staff deployed a pepper ball launcher in an attempt to get Wing to release Sayles. *Id.* at ¶ 103. Wing stopped the attack. *Id.* at ¶ 104.

> According to the Amended Complaint (Doc. 23):
>
> Sayles was rendered unconscious. He was taken under medical care and was determined to have suffered hypoxic brain trauma, other trauma, became comatose and is in a chronic vegetative state. He was and is unable to communicate in either a verbal or nonverbal way, secondary to his medical and psychological limitations. He is expected to remain in such a medical and psychological status in the future.

*Id.* at ¶ 108.

During the subsequent FBI investigation regarding the attack, Wing told investigators that he did not want to live with an African American cellmate and that he warned staff that he would continue this conduct if the prison continued to assign him African American cellmates. *Id.* at ¶ 105.

On June 24, 2014, Wing was charged with assault and attempted murder. *Id.* at ¶ 106. On January 15, 2015, during his change of plea and sentencing hearing, Wing stated:

> [I]t's clear to even the biggest idiot that I was put in that cell by staff to exploit my racial views knowing I would attack this dude . . . The whole thing is, this whole situation happened because of staff playing games. Now, besides all of that, I have no problem handling my business when I have to. I'm just pointing out that basically I was exploited.

*Id.* at ¶ 107.

On November 7, 2016, Plaintiff filed the first Amended Complaint (Doc. 6). On March 22, 2017, Plaintiff filed a second Amended Complaint (Doc. 23), seeking damages from Defendants for injuries sustained by Sayles at the hand of his cellmate, Wing. The Amended Complaint (Doc. 23) also raises negligence and intentional tort claims under the Federal Tort Claims Act. On May 22, 2017, Defendants filed an Answer (Doc. 26).

In total, through the Amended Complaint (Doc. 23), Plaintiff raises nine (9) counts:

1. Count I – Eighth Amendment: Failure to Protect (against Defendants Ebbert, Kaszuba, Sudul, Fuller, Olver, Durkin, Gintz, Pedone, and Vizcaino);
2. Count II – Eighth Amendment: Failure to Supervise (against Defendants Samuels, Norwood, Ebbert, and Kaszuba);
3. Count III – Eighth Amendment: Failure to Intervene (against Defendants Gonzalez, Hagemeyer, Vinton, and McCauley);

4. Count IV – Eighth Amendment: Failure to Intervene (against Defendants Hagemeyer, Vinton, and McCauley);
5. Count V – First Amendment: Retaliation (against Defendant Sudul and all Defendants who participated in retaliatory acts against Sayles);
6. Count VI – Federal Torts Claim Act: Negligence (against the United States of America);
7. Count VII – Federal Tort Claims Act: Negligence, Failure to Intervene (against the United States of America);
8. Count VIII – Federal Tort Claims Act: Negligence, Failure to Conduct Rounds (against the United States of America); and
9. Count IX – Federal Tort Claims Act: Intentional Infliction of Emotional Distress (against the United States of America).

(Doc. 23, ¶¶ 128-90).

As relief, Plaintiff requests:

1. Compensatory damages as to all Counts;
2. Punitive damages as to Counts I – V;
3. Injunctive relief as to Counts I – V;
4. Declaratory relief as to all Counts;
5. Reasonable attorneys' fees and costs; and
6. Such other further relief as this Court deems just.

(Doc. 23, pp. 38-39).

On February 5, 2019, Defendants Durkin, Ebbert, Fuller, Gintz, Gonzalez, Hagemeyer, Kaszuba, McCauley, Norwood, Olver, Pedone, Samuels, Sudul, Vinton, and Vizcaino (collectively "Moving Defendants") filed a Motion for Judgment on the Pleadings (Doc. 48) and a Brief in Support (Doc. 49). On March 1, 2019, Plaintiff filed a Brief in Opposition (Doc. 56). On March 14, 2019, Moving Defendants filed a Reply Brief (Doc. 57).

III.    LEGAL STANDARD

Defendants have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed R. Civ. P. 12(c). In ruling on a motion for judgment on the pleadings, courts are to consider the pleadings and exhibits thereto, matters of public record and "undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents." *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010). Motions filed pursuant to Rule 12(c) are reviewed under the same standard that applies to a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *See Turbe v. Gov't of V.I.,* 938 F.2d 427, 428 (3d Cir. 1991); *United States v. Cephalon, Inc.*, 159 F. Supp. 3d 550, 555 (E.D. Pa. 2016).

Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In deciding whether a complaint fails to state a claim upon which relief can be granted, the court is required to accept as true all factual allegations in the complaint as well as all reasonable inferences that can be drawn from the complaint. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994). These allegations and inferences are to be construed in the light

most favorable to the plaintiff. *Id.* However, the court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Further, it is not proper to "assume that [the plaintiff] can prove facts that [he] has not alleged . . . ." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Following the rule announced in *Ashcroft v. Iqbal*, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a complaint must recite factual allegations enough to raise the plaintiff's claimed right to relief beyond the level of mere speculation. *Id.* To determine the sufficiency of a complaint under the pleading regime established by the Supreme Court, the court must engage in a three-step analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675, 679). "In other words, a complaint must do more than allege the

plaintiff's entitlement to relief" and instead must 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

As the court of appeals has observed:

> The Supreme Court in *Twombly* set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in *Iqbal*. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

*Burtch v. Milberg Factors, Inc*., 662 F.3d 212, 220-21 (3d Cir. 2011).

IV. ANALYSIS

Defendants argue that they are entitled to judgment on the pleadings because: (1) Plaintiff has not alleged enough personal involvement by Defendants Samuels, Norwood, Ebbert, and Kaszuba to state a plausible *Bivens* claim; and (2) there is no *Bivens* Remedy for Plaintiff's Constitutional Claims.

    A.    WHETHER PLAINTIFF HAS ALLEGED ENOUGH TO SHOW THAT DEFENDANTS SAMUELS, NORWOOD, EBBERT, AND KASZUBA WERE PERSONALLY INVOLVED

Through Count II of the Amended Complaint, Plaintiff brings claims against Defendants Samuels, Norwood, Ebbert, and Kaszuba (collectively "Supervisory Defendants") for "Failure to Supervise."

Liability in a *Bivens* action is personal in nature, and to be liable, a defendant must have been personally involved in the wrongful conduct. In other words, defendants are "liable only for their own unconstitutional conduct." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes,* 135 S.Ct. 2042 (2015). And so respondeat superior cannot form the basis of liability. *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005). Thus, a constitutional deprivation cannot be premised merely on the fact that the defendant was a prison supervisor when the incidents set forth in the complaint occurred. *See Alexander v. Forr*, 297 F. App'x 102, 104-05 (3d Cir. 2008). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009).

The Third Circuit has "recognized that 'there are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating

plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations.'" *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n. 5 (3d Cir. 2010)).

"Where a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in (i.e., tacitly assented to or accepted) the subordinate's conduct." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997) (footnote omitted), *abrogated on other grounds*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015).

To set forth a claim for supervisory liability under the policy-and-practice strand of supervisory liability, a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisory was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk, and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Id.* at 227 (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)).

Thus, as to the first step, to sustain a claim, a plaintiff must "identify a . . . 'policy' or 'custom' that caused the plaintiff's injury." *Bd. Of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). This custom must be "so widespread as to have the force of law." *Id.* at 404; *see also Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (concluding that a policy is an official proclamation or edict of a municipality, while a custom is a practice that is "so permanent and well settled as to virtually constitute law") (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (internal citations omitted).

A plaintiff must further "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 107 (3d Cir. 2002) (citing *Brown*, 520 U.S. at 404).

Plaintiff alleges that ongoing, rampant violence in the SHU resulted from longstanding practices of the SHU staff of placing violent inmates into the cells of protective custody inmates. Plaintiff argues that the allegations are not based merely on Supervisory Defendants' respective positions, but, instead, on the fact that Supervisory Defendants knew about the violence problems in the SHU through "reports. . . internal audits, incident reports, disciplinary reports, complaints (including administrative remedies and appeals) made by inmates and their families, and lawsuits filed by inmates and their families" and other

communications including email, internal memoranda, and meetings. (Doc. 23, ¶¶ 118-19). Defendants also admit that they were aware of the previous incidents of violence in the SHU and specifically knew about Wing's past history of violence. *See* Answer, ECF No. 26, ¶¶ 85, 118-19.

Regarding causation, the Amended Complaint alleges that, despite their knowledge of the violence in the SHU, Supervisory Defendants:

> failed to adequately monitor and supervise SHU staff; failed to provide different or additional training for SHU staff; failed to thoroughly and effectively investigate these incidents; and failed to impose discipline on SHU staff found to be involved in failing to prevent or appropriately respond to these incidents

Am. Compl., ECF No. 23, ¶ 124.

Plaintiff alleges that the ongoing violence in the SHU and the SHU staff's conduct, created a "culture of violence," endangering inmates and prison staff. *Id*. at ¶ 117. Plaintiff further alleges that Wing's attack on Sayles came about because of these practices:

> Due to these failures to act, [Supervisory Defendants] acquiesced in the continuation of inmate-on-inmate violence in the SHU at USP Canaan such that this paradigm continued to be "business as usual" and ultimately resulted in the brutal attack on [Sayles]

*Id.* at ¶ 125.

Viewing the facts presented in the pleadings and the inferences to be drawn therefrom in favor of Plaintiff, Defendants' Motion for Judgment on the Pleadings

should be denied as to the claims against Supervisory Defendants. Plaintiff has sufficiently pled the requirements to establish a supervisory liability claim under *Bivens*. Based on the pleadings, Supervisory Defendants knew of the violence in the SHU and continued the practice of placing violent inmates with inmates in protected housing.

### B. WHETHER PLAINTIFF HAS STATED A PLAUSIBLE *BIVENS* CLAIM

Moving Defendants also challenge Count I (Failure to Protect), Count III (Failure to Intervene), and Count IV (Failure to Intervene) of the Complaint.

*1. Failure to Protect*

The Supreme Court, in *Ziglar v. Abbasi*, signaled fundamental change to the *Bivens* analysis. *Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017). The Supreme Court stated: "[E]xpanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1857.

Post-*Abbasi*, in order for a court to expand *Bivens* to new claims, the court must first decide if the case presents a new context for *Bivens* cases:

> If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new. Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the

> problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1159-60.

The parties greatly differ as to what cases are recognized as "*Bivens* contexts." Defendant argues that there are only three *Bivens* cases to consider: *Bivens* (creating a remedy for Fourth Amendment violations regarding searches and seizures), *Davis v. Passman* (creating a *Bivens* action under the Due Process Clause for gender discrimination), and *Carlson v. Green* (creating a cause of action under the Eighth Amendment for denial of medical treatment to a prisoner). Plaintiff draws upon cases growing from the Supreme Court's three notable cases—*Bivens*, *Davis*, and *Carlson*—rather than a strict adherence to the analysis of those three cases.

The Third Circuit does not agree with the Defendants' strict analysis. In *Bistrian v. Levi*, a federal prisoner asserted *Bivens* claims against prison staff for failure to protect him from violence from other prisoners. *Bistrian v. Levi*, 912 F.3d 79, 84 (2018). The Court conducted an *Abbasi* analysis. *See id.* at 89. The Court relied on *Farmer v. Brennan* and concluded that there was no new *Bivens* context presented by the plaintiff's failure to protect claims. *Id.* at 91.

In its analysis, the Court stated:

> It is true that *Abbasi* identified three *Bivens* contexts and did not address, or otherwise cite to, *Farmer*. 137 S. Ct. at 1854-55. But we decline to "conclude [that the Supreme Court's] more recent cases have, by implication, overruled an earlier precedent." *Agostini v. Felton*, 521 U.S. 203, 237, 117 S. Ct. 1997, 138 L. Ed. 2d 391 (1997). It may be that the Court simply viewed the failure-to-protect claim as not distinct from the Eighth Amendment deliberate indifference claim in the medical context. *Farmer* continues to be that case that most directly deals with whether a *Bivens* remedy is available for a failure-to-protect claim resulting in physical injury. 137 S. Ct. at 832-34.

*Id.*

Plaintiff alleges that Sayles faced substantial risk of serious harm, Defendants knew of this substantial risk, and Defendants failed to take action to protect Sayles from the potential harm. Plaintiff's claim is consistent with the *Bistrian* analysis. Plaintiff's Failure to Protect claims do not present a new *Bivens* context. Count I of Plaintiff's Amended Complaint should survive Defendants' Motion for Judgment on the Pleadings.

2. *Failure to Intervene*

Plaintiff also alleges Failure to Intervene under Count III and Count IV. Both Count III and Count IV are against Defendants Hagemeyer, Vinton, and McCauley.

As stated above, Plaintiff's Failure to Protect claim is not a new *Bivens* context. Although labeled, "Failure to Intervene," there is nothing distinguishing Count III and Count IV from a failure to protect claim. Plaintiff alleges that Sayles

faced substantial risk of serious harm, Defendants knew of this risk, and Defendants failed to take action to protect Sayles from the potential harm. There does not appear to be a legal distinction between "protect" and "intervene." None of the parties distinguish between the two claims, nor do they provide arguments specific to either type of claim. Thus, Count III and Count IV of Plaintiff's Amended Complaint should survive Defendants' Motion for Judgment on the Pleadings.

### 3. First Amendment Retaliation Claim

As Count V of the Complaint, Plaintiff alleges retaliation under the First Amendment against Defendant Sudul and all other defendants who engaged in retaliatory acts. Plaintiff argues that Defendant Sudul and others threatened and harassed Sayles because Sayles repeatedly attempted to seek redress for his grievances.

There is no cause of action for First Amendment retaliation under *Bivens* in the prison context.

The court has noted:

> [T]he United States Court of Appeals for the Third Circuit has signaled . . . that *Bivens* may not be extended to First Amendment retaliation claims in the prison context. In *Watlington on behalf of FCI Schuykill African Am. Inmates v. Reigel*, No. 16-3222, 2018 WL 501365, at *3 n.3 (3d Cir. Jan. 22, 2018), the court of appeals affirmed the dismissal of a First Amendment retaliation claim brought by a federal prisoner against correctional staff. In agreeing that

> dismissal of this claim was appropriate the appellate court observed, in part, that "[A] First Amendment retaliation claim . . . may not apply to a *Bivens* claim against a federal official. *See Vanderklok v. United States*, 868 F.3d 189, 199 (3d Cir. 2017) (holding that '*Bivens* does not afford a remedy against airport security screeners who allegedly retaliate against a traveler who exercises First Amendment rights') *see also Reichle v. Howards*, 566 U.S. 658, 663 n. 4, 132 S. Ct. 2088, 182 L.Ed.2d 985 (2012) (stating that '[w]e have never held that *Bivens* extends to First Amendment claims') *Id.* While the *Watlington* decision is not precedential, it is highly persuasive as a "paradigm of the legal analysis [this Court] should . . . follow.;" *Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 n. 12 (3d Cir. 1996), and the court's express reliance upon *Vanderklok* and extension of *Vanderklok*'s holding to *Bivens* First Amendment retaliation claims in a federal correctional context is not something that we are free to ignore or discount.

*Randolph v. FCI Allenwood (Med)*, No. 1:17-CV-786, 2018 WL 2276246, at *10 (M.D. Pa. Apr. 24, 2018), *report and recommendation adopted*, No. 1:17-CV-786, 2018 WL 2263733 (M.D. Pa. May 17, 2018).

Plaintiff attempts to assert a claim for First Amendment retaliation against Defendant Sudul and other defendants. There is not, however, a cause of action for First Amendment retaliation under *Bivens*.

Plaintiff's claim for First Amendment retaliation against Defendant Sudul and others fails as a matter of law. Defendants' Motion for Judgment on the Pleadings should be GRANTED as to Plaintiff's First Amendment retaliation claim.

V.  SUMMARY

Plaintiff's Amended Complaint contains nine (9) counts. Moving Defendants moved for judgment on the pleadings on the *Bivens* claims—five (5) of those counts.

Based on the foregoing, I recommend that Defendants' Motion for Judgment on the Pleadings be denied as to Count I, Count II, Count III, and Count IV. I recommend that Defendants' Motion for Judgment on the Pleadings be granted as to Count V (Retaliation) only.

Defendants did not move for judgment on the pleadings on Count VI, Count VII, Count VIII, or Count IX. Thus, those claims survive.

[The next page contains the recommendation.]

VI. RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that:

1. Defendants' Motion for Judgment on the Pleadings (Doc. 48) should be **DENIED as to Plaintiff's Count I** – Eighth Amendment Failure to Protect;

2. Defendants' Motion for Judgment on the Pleadings (Doc. 48) should be **DENIED as to Plaintiff's Count II** – Eighth Amendment Failure to Supervise;

3. Defendants' Motion for Judgment on the Pleadings (Doc. 48) should be **DENIED as to Plaintiff's Count III** – Eighth Amendment Failure to Intervene;

4. Defendants' Motion for Judgment on the Pleadings (Doc. 48) should be **DENIED as to Plaintiff's Count IV** – Eighth Amendment Failure to Intervene;

5. Defendants' Motion for Judgment on the Pleadings (Doc. 48) should be **GRANTED as to Plaintiff's Count V** – First Amendment Retaliation;

Date: October 2, 2019          BY THE COURT:

                               *s/William I. Arbuckle*
                               William I. Arbuckle
                               U.S. Magistrate Judge

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANICE SHORTER, <br> *Personal Representative and Legal* <br> *Guardian for Donshay Sayles* <br> Plaintiff <br><br> v. <br><br> CHARLES E. SAMUELS, JR., *et al.*, <br> Defendants | CIVIL ACTION NO. 3:16-CV-1973 <br><br> (MANNION, D.J.) <br><br> (ARBUCKLE, M.J.) |

NOTICE OF LOCAL RULE 72.3

NOTICE IS HEREBY GIVEN that any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions.

Date: October 2, 2019                              BY THE COURT

                                                                *s/William I. Arbuckle*
                                                                William I. Arbuckle
                                                                U.S. Magistrate Judge