# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANICE SHORTER, Personal Representative and Legal Guardian of DONSHAY SAYLES, : : : : Plaintiff : : v. : : CHARLES E. SAMUELS, JR., *et al.,*, : : Defendants : | CIVIL ACTION NO. 3:16-1973 (MANNION, D.J.) (ARBUCKLE, M.J.) |

## MEMORANDUM

Pending before the court is the report and recommendation of Judge Arbuckle, (Doc. 81), recommending that the motion for judgment on the pleadings filed on behalf of <u>Bivens</u> Defendants, (Doc. 48), be granted in part, and denied in part. <u>Bivens</u> Defendants filed objections to the report, (Doc. 82). Upon review, the report will be adopted in part. The Defendants' motion will be granted in part, and denied in part.

## I. BACKGROUND[1]

By way of relevant background, on March 22, 2017, plaintiff Janice Shorter, as the personal representative and legal guardian for Donshay

---

[1]The court notes that since Judge Arbuckle stated the full procedural and factual background of this case in his report and since the parties did not object to them, the court will not repeat them entirely herein.

Sayles, formerly an inmate at USP-Canaan,[2] filed a Second Amended Complaint ("SAC"), (Doc. 23), in this combined Bivens[3] action, pursuant to 28 U.S.C. §1331, as well as tort action, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2671, *et seq*. Plaintiff seeks compensatory and punitive damages as well as injunctive and declaratory relief from defendants for severe injuries Sayles allegedly sustained when he was assaulted by his cellmate, Joseph Wing, on May 16, 2014. On January 15, 2015, Wing pled guilty to assault and attempted murder regarding his attack on Sayles.

In the SAC, plaintiff raises nine counts, including five constitutional claims against defendants, who are BOP staff and officials, under the First and Eighth Amendments, and three counts of negligence and one count of intentional infliction of emotional distress ("IIED") against the Untied States under the FTCA.[4]

On May 22, 2017, defendants filed their answer and affirmative defenses to plaintiff's SAC. (Doc. 26). On July 10, 2019, Judge Arbuckle granted defendants' "Motion for Leave to File Amended Affirmative Defenses and Answer", (Doc. 70), and deemed defendants' Amended Affirmative Defenses and Answer, Doc. 70-3, as their operative response to the SAC.

---

[2] Sayles is no longer in federal custody.

[3] Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971).

[4] Since Judge Arbuckle details the plaintiff's claims in the SAC and the defendants named in each Count, the court will not repeat them.

(Doc. 74).

On February 5, 2019, defendants Durkin, Ebbert, Fuller, Gintz, Gonzalez, Hagemeyer, Kaszuba, McCauley, Norwood, Olver, Pedone, Samuels, Sudul, Vinton, and Vizcaino ("Bivens Defendants") filed a motion for judgment on the pleadings regarding plaintiff's constitutional claims in Counts I, II, III, IV, and V of the SAC. (Doc. 48). The motion was briefed.

On October 2, 2019, Judge Arbuckle issued his report, (Doc. 81), recommending that Bivens Defendants' motion for judgment on the pleadings be denied as to Counts I, II, III, and IV, and that it be granted as to Count V (Retaliation).

On October 9, 2019, Bivens Defendants filed objections to the report. Defendants' objections primarily pertain to Judge Arbuckle's finding that their motion should be denied with respect to Count II, Failure to Supervise claim against four supervisory BOP officials. (Doc. 82). However, Defendants also object to Judge Arbuckle's findings that plaintiff's constitutional claims in Counts I, III and IV do not present a new context of Bivens claims. Plaintiff filed a response to the objections on October 30, 2019. (Doc. 85). Bivens Defendants then filed a reply in support of their objections. (Doc. 86).

## II.   STANDARD OF REVIEW

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); Brown v.

3

Astrue, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. Rieder v. Apfel, 115 F.Supp.2d 496, 499 (M.D.Pa. 2000) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; see also Univac Dental Co. v. Dentsply Intern., Inc., 702 F.Supp.2d 465, 469 (M.D.Pa. 2010) (citing Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31.

## III. DISCUSSION[5]

Plaintiff essentially alleges that prison staff at USP-Canaan and BOP

---

[5]Since Judge Arbuckle states the correct legal standard for deciding a motion for judgment on the pleadings pursuant to Rule 12(c), which is identical to that for deciding a motion to dismiss pursuant to Rule 12(b)(6), see Turbe v. Gov't of V.I., 938 F.2d 427, 428 (3d Cir. 1991), the court does not repeat it herein.

4

officials failed to protect Sayles when he was attacked by Wing in the SHU, that they were aware of the violence in the SHU and continued the practice of housing violent inmates with inmates in protected housing, and that they failed to timely intervene during the attack, in violation of his Eighth Amendment rights. Specifically, plaintiff alleges that Bivens Defendants, knew or should have known that Sayles, an African American and protective custody inmate, faced an excessive risk to his safety in placing him in a cell with Wing based on their knowledge of violence in the SHU, based on Wing's prior assault of an African American cellmate and, based on Wing's statement to prison staff that he did not want to live with another African American cellmate and that he would kill such a cellmate. Plaintiff also raises a retaliation claim under the First Amendment against defendants for allegedly taking retaliatory acts against Sayles. Additionally, plaintiff alleges that the United States was negligent since it beached its duty to protect him, to intervene, and to conduct rounds in the prison. Further, plaintiff raises an IIED claim against the United States.

In Count II of the SAC, plaintiff asserts a failure to supervise claim against defendants Samuels, Norwood, Ebbert, and Kaszuba ("Supervisory Defendants"). During the relevant times of this case, Samuels was the Director of the BOP and Norwood was the Northeast Regional Director of the BOP. Ebbert was the Warden and Kaszuba was at a Captain at USP-Canaan. Defendants contend that the four Supervisory Defendants are entitled to judgment on the pleadings since plaintiff has failed to sufficiently allege a

5

claim of supervisory liability, and that they were personally involved in the violation of Sayles' constitutional rights as required to state a cognizable claim under Bivens. Defendants also contend that there is no remedy under Bivens regarding plaintiff's failure to supervise claim in Count II under the Eighth Amendment based on Ziglar v. Abbasi, — U.S.—, 137 S.Ct. 1843 (2017). Specifically, Defendants contend that Judge Arbuckle's report was erroneous regarding Count II, "particularly its conclusion that [plaintiff's] claims do not present a new context of Bivens claims" since this case's facts are significantly different from the facts in Bistrian v. Levi, 912 F.3d 79 (3d Cir. 2018).

Judge Arbuckle first found that plaintiff's allegations were sufficient to show that Samuels, Norwood, Ebbert, and Kaszuba were personally involved in the violations of Sayles' constitutional rights based on supervisory liability.

Plaintiff's constitutional claims are filed pursuant to 28 U.S.C. §1331, in accordance with Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, (1971). Under Bivens, the District Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor. Bivens, supra. Pursuant to Bivens, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978). A Bivens-style civil rights claim is the

6

federal equivalent of an action brought pursuant to 42 U.S.C. §1983 and the same legal principles have been held to apply. See, Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir. 1975); Veteto v. Miller, 829 F.Supp. 1486, 1492 (M.D.Pa. 1992); Young v. Keohane, 809 F.Supp. 1185, 1200 n. 16 (M.D.Pa. 1992). In order to state an actionable Bivens claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. See West v. Atkins, 487 U.S. 42, 48 (1988); Young v. Keohane, 809 F.Supp. 1185, 1199 (M.D.Pa. 1992).

"To establish liability for deprivation of a constitutional right under §1983 [and Bivens], a party must show personal involvement by each defendant." Ashcroft v. Iqbal, 556 U.S. 662, 676-77 (2009) ("Because vicarious liability is inapplicable to Bivens and §1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); see Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). Liability under §1983 and Bivens is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or actual knowledge and acquiescence. See Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997) (overturned on other grounds) (*citing* Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Acquiescence exists where "a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so." Festa v. Jordan, 803 F. Supp. 2d 319, 325 (M.D. Pa. 2011) (*quoting* Robinson, 120

F.3d, at 1294).

However,

> A government official can be held liable for acts of a subordinate in two ways. First, "personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Supervisory liability can be established "by showing a supervisor tolerated past or ongoing misbehavior." To plead acquiescence, "the supervisor must contemporaneously know of the violation of a plaintiff's rights and fail to take action." "Allegations of 'actual knowledge and acquiescence...must be made with appropriate particularity.'" And "[a]lthough a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive."

Acosta v. Democratic City Committee, 288 F.Supp.3d 597, 636-37 (E.D.Pa. 2018) (internal citations omitted).

"Second, a supervisor can be liable under §1983 [and Bivens] if he 'implements a policy or practice that creates an unreasonable risk of a constitutional violation on the part of the subordinate and the supervisor's failure to change the policy or employ corrective practices is a cause of this unconstitutional conduct.'" Id. (citations omitted). "Claims of failure to train or supervise are 'generally considered a subcategory of policy or practice liability.'" Id. (citations omitted).

As such, a complaint alleging supervisory liability in the second manner "'must [first] identify a supervisory policy or practice that the supervisor failed to employ.'" Mark v. Patton, 696 Fed.Appx. 579, 582 (3d Cir. 2017) (citations omitted). Then, to state such a claim for supervisory liability, the plaintiff must allege that:

8

> (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure.

Id. (citation omitted).

In order for plaintiff to proceed with her supervisory liability theory against Supervisory Defendants under the second manner, she must identify a specific policy or procedure that allowed Sayles to be placed in the same cell with Wing despite their alleged knowledge of violence in the SHU and knowledge of Wing's history of violence. Id. Also, plaintiff must allege that the policy or procedure "created an unreasonable risk of a constitutional violation or that [Supervisory Defendants] [were] aware of such a risk." Id. Additionally, "'it is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did." Acosta, 288 F.Supp.3d at 637 (citations omitted). Rather, "'the plaintiff must identify specific acts or omissions of the supervisor that evidence deliberate indifference and persuade the court that there is a relationship between the identified deficiency and the ultimate injury.'" Id. (citations omitted).

Judge Arbuckle specifically finds that "plaintiff has sufficiently pled the requirements to establish a supervisory liability claim under Bivens [against Supervisory Defendants]" since "[b]ased on the pleadings, Supervisory Defendants knew of the violence in the SHU and continued the practice of

9

placing violent inmates with inmates in protected housing." He also cites to defendants' answer to the SAC and states that "Defendants also admit that they were aware of the previous incidents of violence in the SHU and specifically knew about Wing's past history of violence." (citing Doc. 26, ¶'s 85, 118-19).

In their objections, defendants argue that the SAC does not allege a cognizable claim in Count II based on supervisory liability since it fails to sufficiently allege that Supervisory Defendants established and maintained a policy, practice, or custom that directly caused Sayles' constitutional violations. They state that plaintiff relies only upon vague and conclusory allegations that Supervisory Defendants had a "longstanding practices of the SHU staff of placing violent inmates into cells of protective custody inmates and that these practices are substantiated by unspecified incidents and disciplinary "reports", "internal audits", and administrative remedy filings made by inmates as well as other communications. Thus, defendants state that plaintiff has failed to plausibly allege that Supervisory Defendants were aware of and condoned such a policy.

Defendants also argue that Supervisory Defendants did not make the stated admissions in their answer to the SAC that Judge Arbuckle attributes to them.

The court concurs with Judge Arbuckle that, at this stage of the case with discovery ongoing, the allegations in the SAC are sufficient to plausibly state a claim of supervisory liability against Supervisory Defendants in Count

II under the first and second manner for imposing such liability. (See Doc. 70-3, ¶'s 118-121). The court finds that plaintiff has adequately pled that the Supervisory Defendants had personal knowledge of and acquiesced in the alleged ongoing inmate-on-inmate violence in the SHU and about the staff misconduct which caused, in part, the violence and, that they did not take any actions to stop these practices. Plaintiff also alleges that the Supervisory Defendants' knowledge and awareness of past violence in the SHU was derived from reports, audits, complaints, and other sources. Plaintiff further alleged that the Supervisory Defendants tolerated past and ongoing violence in the SHU. As such, plaintiff has sufficiently alleged a practice that the Supervisory Defendants condoned that created a risk of a constitutional violation. See Lee v. Janosko, 2019 WL 2392661, *2 (W.D.Pa. June 6, 2019) ("In order to withstand a Rule 12(b)(6) challenge, a complaint must allege sufficient factual content to support a plausible inference that the defendant is liable for the alleged wrongdoing.") (citations omitted).

To the extent that Judge Arbuckle relies upon defendants' answer to the SAC and finds that Supervisory Defendants admitted that "they were aware of the previous incidents of violence in the SHU and specifically knew about Wing's past history of violence", the court finds that although these defendants admitted that they were aware of previous incidents of violence regarding inmate-on-inmate attacks in the SHU, they denied the allegations that they were aware the staff "were involved in causing or acquiescing to inmate-on-inmate violence in the SHU." They also denied that they were

11

aware that "protective custody inmates in the SHU [at the prison] faced a substantial risk of serious harm at the hands of other SHU inmates, through the involvement and/or acquiescence of [Supervisory Defendants]." (Doc. 70-3, ¶'s 122-125).

Next, Defendants argue that the report failed to address their argument that the failure to supervise claim in Count II presented a "new Bivens context" under Ziglar v. Abbasi, — U.S. —, 137 S. Ct. 1843 (2017), i.e., supervisory liability is, itself, a "new" context, and that the report should have addressed the "special factors" analysis pursuant to Abbasi.

At issue is whether plaintiff's Eighth Amendment failure to supervise claim based on supervisory liability presents a new context in Bivens. Following Bivens, in which the Supreme Court "implied a private right of action under the Fourth Amendment for an unreasonable search and seizure claim against FBI agents", there are only two other specific cases where the Supreme Court has recognized Bivens claims, namely: "(1) under the Fifth Amendment's Due Process Clause for gender discrimination against a Congressman for firing his female secretary, Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264 (1979), and (2) under the Eighth Amendment's prohibition on cruel and unusual punishment against prison officials for failure to treat an prisoner's asthma which led to his death, Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468 (1980)." Lee, 2019 WL 2392661, *3 (citing Ziglar, 137 S. Ct. at 1855).

As the court in Lee, id., explained:

12

> In Ziglar [ ], the Supreme Court recognized Bivens actions but held that it will now take a more "cautious" approach to each Bivens case to determine if the action falls under the previous Bivens claims and will not accept a Bivens action that is brought in a new context. The Court made clear that "expanding the Bivens remedy is now a disfavored judicial activity," id. at 1857, and that the purpose in taking this new cautious approach is to avoid intruding on the role of Congress to enact statutes for claims outside the current Bivens context. A Bivens action falls outside of the current Bivens context and is thus "novel" "[i]f the case is different in a meaningful way from previous Bivens cases decided by [the Supreme Court]." Id. at 1859. Courts should no longer imply rights and remedies as a matter of course, "no matter how desirable that might be as a policy matter, or how compatible with the statute [or constitutional provision]. Id. at 1856 (quoting Alexander v. Sandoval, 532 U.S. 275, 286-87, 121 S.Ct. 1511 (2001)); Vanderklok, 868 F.3d at 200.

Additionally, "[i]f a claim presents a new context in Bivens, then the court must apply the two-step inquiry announced in Wilkie v. Robbins, 551 U.S. 537, 127 S.Ct. 2588 (2007): (I) whether alternative remedies exist and (ii) whether there are special factors counseling against extension of Bivens into the new cause of action." Id. at *4 (citations omitted). "At the second step, "the inquiry must concentrate on whether the judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Id. (citing Ziglar, 137 U.S. at 1857-58).

After conducting an Abbasi analysis, the report finds that plaintiff's claims in Counts I, III and IV do not present a new context of Bivens claims. In their objections, Defendants contend that the report did not address their argument that plaintiff's failure to supervise claim in Count II based on supervisory liability presented a "new Bivens context" under Abbasi, and their

13

argument that this claim should be dismissed based on the Abbasi rationale. They contend that plaintiff's Bivens claim in Count II is meaningfully different from the current Bivens context and from the previous Eighth Amendment failure to protect case decided by the Third Circuit in Bistrian. As such Defendants argue that Judge Arbuckle should have applied the Abbasi analysis and the Wilkie two-step inquiry to Count II.

Plaintiff argues that "even though the way in which supervisors are found liable differs in some respects from the way non-supervisors are found liable for an Eighth Amendment failure to protect claim, they are fundamentally the same type of claim, which was held not to present a 'new Bivens context' by the Third Circuit in Bistrian."

The report does not specifically address whether the plaintiff's claim in Count II presents a new context of Bivens claims based on the Abbasi analysis. Plaintiff contends that since the report addressed supervisory liability at length, "a reasonable reading of the [report] is that the supervisory claims were implicitly encompassed in the Abbasi analysis." Alternatively, plaintiff maintains that an express reference to her supervisory liability claim in Count II in the report's Abbasi analysis was unnecessary and that the report did not err by failing to separately address her stated claim under the Abbasi analysis since "the [report] properly concluded that there is no 'new Bivens context' for all of the failure to protect claims in this case, including those directed towards the Supervisory Defendants."

As the report finds, Bistrian supports a conclusion that plaintiff's failure

14

to protect claim in Count I and Failure to intervene claims in Counts III and IV against prison staff at USP-Canaan, based on an Abbasi analysis and the Supreme Court's decision in Farmer v. Brennan, 511 U.S. 825, 828, 114 S.Ct. 1970 (1994), do not present new Bivens context, Thus, the report correctly concludes that Defendants' motion should be denied as to Counts I, III and IV. However, the report does not sufficiently address Defendants' argument that there is a new Bivens context with respect to plaintiff's failure to supervise claim in Count II based on supervisory liability and that this claim should have been specifically analyzed under Abbasi.

The court concurs with Defendants that "this case's circumstances are meaningfully different from those in Bistrian" and that a Bivens claim in Count II is unavailable in this case's context. The court finds that plaintiff's failure to supervise claim in Count II based on supervisory liability is unlike the Eighth Amendment claim in Carlson, i.e., the failure to medically treat a prisoner claim, and plaintiff's facts are significantly different. See Lee, 2019 WL 2392661, *5 (court held that "while Carlson extended the Bivens remedy to prisoners, it only did so for Eighth Amendment denial of medical care claims."); Ziglar, 137 S.Ct. at 1864 ("[E]ven a modest extension [of Bivens] is still an extension.").

Since the court finds that plaintiff's Eighth Amendment claim in Count II presents a new Bivens context, the court must apply the two-step Wilkie inquiry and conduct the special factors analysis.

First, the court finds that no alternative remedies exist for plaintiff to

obtain money damages from BOP staff and officials, in their personal capacities, with respect to her constitutional claims, especially since Sayles is no longer in federal custody. See Lee, 2019 WL 2392661, *4. "However, the lack of an alternative remedy for damages does not necessarily mean the Court should extend a Bivens remedy to this new context", and "[t]he Court must still 'make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed ... to any special factors counselling hesitation before authorizing a new kind of federal litigation.'" Id. (citing Wilkie, 551 U.S. at 550).

Recognizing that the phrase "special factors counselling hesitation" has not yet been defined by the Supreme Court, the court in Lee, id., stated:

> "The necessary inference [of the phrase], though, is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Ziglar, at 137 S.Ct. at 1857–58. Thus, a court must ask "who should decide whether to provide for a damages remedy, Congress or the courts?" Id. at 1857. A "special factor counselling hesitation," is something that "cause[s] a court to hesitate before answering that question in the affirmative." Id. at 1858. Most often, the answer to this question will be Congress. Id. at 1857.

Applying the second prong of the inquiry, the court finds that "there are special factors counseling against extension of Bivens into [a] new cause of action [regarding plaintiff's failure to supervise claim based on supervisory liability]." Id. In Ziglar, 137 S.Ct. at 1860, "[t]he Supreme Court found noncitizens' claims for unlawful detainment and unconstitutional conditions of confinement following a major terrorist attack did not resemble the three

16

recognized Bivens claims, [including the Eighth Amendment failure to provide adequate medical care claim in Carlson] thus presenting a "new context" for a Bivens action. Karkalas v. Marks, 2019 WL 3492232, *7 (E.D.Pa. July 31, 2019).[6]

In Ziglar, 137 S.Ct. at 1865, the Supreme Court then stated:

> Some 15 years after Carlson was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. This Court has said in dicta that the [PLRA's] exhaustion provisions would apply to Bivens suits. But the [PLRA] itself does not provide a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the Carlson damages remedy to cases involving other types of prisoner mistreatment.

(internal citations omitted).

As the court in Lee, 2019 WL 2392661, *6 concluded, "Congress has been active in the area of prisoners' rights, and its actions do not support the creation of a new Bivens claim." The court also finds that plaintiff's failure to supervise claim against Supervisory Defendants "implicates matters of prison administration that counsel against recognition of a Bivens claim." Jones v. Sposato,— Fed.Appx. —, 2019 WL 3546470, *3 n. 4 (3d Cir. Aug. 5, 2019).

Thus, the court declines to expand the Bivens remedy to plaintiff's

---

[6]In Karkalas, 2019 WL 3492232, *10-*14, the court found that plaintiff's Fourth Amendment "claims for unlawful prosecution and pretrial detention present a new context for a Bivens action", and that "special factors exist counseling against implying a Bivens action for [plaintiff's] claims."

17

Eighth Amendment failure to supervise claim in Count II based on supervisory liability. See Lee, 2019 WL 2392661, *6 (the court "decline[d] to find an implied Bivens cause of action arising out of Plaintiff [inmate's] Eighth Amendment [cruel and unusual punishment] claim."); Gonzalez v. Hasty, 269 F.Supp.3d 45 (E.D.N.Y. 2017) (court found that there was no available Bivens remedy regarding inmate's Eighth Amendment non-medical claims with respect to the conditions of confinement in the SHU). As such, the court will grant the Bivens Defendants' motion for judgment on the pleadings regarding Count II and the four Supervisory Defendants will be dismissed with prejudice from this action. Also, based on the above, the court finds futility in allowing plaintiff to file a third amended pleading regarding Count II, and the failure to supervise claim will be dismissed with prejudice.

The objections of Bivens Defendants primarily relate to Judge Arbuckle's recommendation as to Count II of the SAC, i.e., the failure to supervise claim against Supervisory Defendants. In the body of their objections, Defendants do not specifically object to Judge Arbuckle's recommendation that their motion be denied with respect to Count I (Failure to Protect), Count III (Failure to Intervene), and Count IV (Failure to Intervene). In a footnote, Defendants state that they also "object to the balance of the [report], particularly its conclusion that [plaintiff's] claims do not present a new context of Bivens claims." As mentioned above, the court has reviewed Judge Arbuckle's reasoning regarding Counts I, III and IV, as well as his Abbasi analysis regarding these claims. The court concurs with the

18

report's findings that plaintiff's claims in Counts I, III and IV do not present a new context of Bivens claims, and finds no error with the report regarding Counts I, III and IV. As such, Defendants' motion will be denied with respect to Counts I, III and IV of the SAC.

Finally, neither party objected to Judge Arbuckle's finding that plaintiff's First Amendment retaliation claim in Count V against defendant Sudul and other unnamed defendants fails as a matter of law since "[t]here is no cause of action [for such a retaliation claim] under Bivens in the prison context." The court finds no error with Judge Arbuckle's reasoning and his recommendation that Defendants' motion for judgment on the pleadings should be granted as to plaintiff's First Amendment retaliation claim, and it will be adopted. See Watlington on behalf of FCI Schuylkill African Am. Inmates v. Reigel, 723 Fed.Appx. 137, 140 n. 3 (3d Cir. Jan. 22, 2018) (Third Circuit noted that "a First Amendment retaliation claim ..., may not apply to a Bivens claim against a federal official." Vanderklok v. United States, 868 F.3d 189 (3d Cir. 2017) (Third Circuit would not create new Bivens cause of action for a First Amendment retaliation claim against TSA agents). Thus, plaintiff's First Amendment retaliation claim will be dismissed with prejudice since based on Watlington and Vanderklok it is futile to grant plaintiff leave to file a third amended pleading regarding this claim. See Jones,— Fed.Appx. —, 2019 WL 3546470, *3.

## IV. CONCLUSION

Upon consideration of the SAC, the motion for judgment on the pleadings filed by Bivens Defendants, and Judge Arbuckle's report, the court will **ADOPT IN PART** the report. The report will be **ADOPTED** regarding the recommendation that Defendants' motion be **DENIED** with respect to Counts I, III and IV of the SAC. The report will be **ADOPTED** regarding the recommendation that Defendants' motion be **GRANTED** as to plaintiff's First Amendment retaliation claim in Count V and, this claim will be **DISMISSED WITH PREJUDICE**. The report will **NOT BE ADOPTED** regarding plaintiff's failure to supervise claim in Count II based on supervisory liability and, Defendants' motion will be **GRANTED** as to this claim. Further, Count II and the four named Supervisory Defendants, Samuels, Norwood, Ebbert, and Kaszuba, will be **DISMISSED WITH PREJUDICE**.[7]

An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: December 3, 2019**

16-1973-01.wpd

---

[7]As Judge Arbuckle notes, since the motion for judgment on the pleadings filed by Bivens Defendants did not include the FTCA claims raised in Counts VI, VII, VIII, and IX of the SAC, the claims in these Counts will proceed.