UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANICE SHORTER, PERSONAL | : | |
| REPRESENTATIVE AND LEGAL | : | NO. 3:16-CV-01973 |
| GUARDIAN FOR DONSHAY SAYLES, | : | |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Mannion) |
| v. | : | (Magistrate Judge Arbuckle) |
| | : | |
| CHARLES E. SAMUELS, JR., ET AL. | : | Electronically Filed |
| | : | |
| Defendants. | : | |

## BRIEF IN OPPOSITION TO MOTION FOR
## SUBSTITUTION OF DEFENDANT WILLIAM FULLER

JOHN C. GURGANUS
United States Attorney

/s/ Richard D. Euliss
Richard D. Euliss (DC 999166)
Harlan W. Glasser (PA 312148)
Assistant United States Attorneys
228 Walnut Street
Harrisburg, PA 17101
(717) 221-4482
(717) 221-4493
Harlan.Glasser@usdoj.gov
Richard.D.Euliss@usdoj.gov

# TABLE OF CONTENTS

I.      *Bivens* Claims Do Not Survive Death of the Defendant ................................1

     A.      Federal Law Governs the Survivability of Federal Claims ................2

     B.      Under Federal Law, *Bivens* Claims Do Not Survive the Death
         of a Defendant because They are Penal, Not Remedial………………..5

     C.      *Carlson* Does Not Stand for the Proposition that *Bivens*
         Claims Survive the Death of Defendant................................................7

II.     There Is No *Bivens* Remedy Against Estates, and the Court Should
    Not Create One Here .....................................................................................10

     A.      The Court Would Have to Create a *Bivens* Remedy Against a New
         Category of Defendant .......................................................................12

     B.      Alternate Processes, Including Those Explicitly Authorized by
         Congress, Exist to Provide Redress for Plaintiff's Claim...................13

     C.      Special Factors Counsel Hesitation ..................................................15

III.    Conclusion ...................................................................................................20

i

## *Federal Cases*

*Acebal v. United States*,
  60 Fed. Cl. 551 (Fed. Cl. 2004) .............................................................2

*Bistrian v. Levi*,
  912 F.3d 79 (3d Cir. 2018) ....................................................................14

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
  403 U.S. 388 (1971)................... 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17

*Carlson v. Green*,
  446 U.S. 14 (1980)........................................... 2, 3, 4, 7, 8, 9, 11, 12, 14

*Chappell v. Wallace*,
  462 U.S. 296 (1983)................................................................................18

*Corr. Servs. Corp. v. Malesko*,
  534 U.S. 61 (2001)................................................ 6, 11, 15, 17

*Cuoco v. Palisades Collection, LLC*,
  2014 WL 956229 (D.N.J. Mar. 11, 2014) ........................................1, 2

*Davis v. Passman*,
  442 U.S. 228 (1979)................................................ 11, 12

*Drewniak v. U.S. Customs and Border Protection*,
  2021 WL 1318028 (D.N.H. Apr. 8, 2021)............................................13

*F.D.I.C. v. Meyer*,
  510 U.S. 471 (1994)................................................................................6

*Giles v. Campell*,
  698 F.3d 153 (3d Cir. 2012) ..................................................................4

*Green ex rel. Estate of Green v. City of Welcn*,
  467 F. Supp. 2d 656 (S.D. W.Va. 2006)..............................................5

*Haggard v. Stevens*,
  683 F.3d 714 (6th Cir. 2012) ............................................................8, 9

*Hernandez v. Mesa*,
  137 S. Ct. 2003  (2017).........................................................................11

*Hernandez v. Mesa*,
    140 S. Ct. 735 (2020)..................................................................15

*Huntington v. Attrill*,
    146 U.S. 657 (1892).....................................................................6

*Loumiet v. United States*,
    948 F.3d 376 (D.C. Cir. 2020)...................................................12

*Minneci v. Pollard*,
    565 U.S. 118 (2012)............................................................. 14, 15

*Oliva v. Nivar*,
    973 F.3d 438 (5th Cir. 2020),
    *cert. denied,* 41 S. Ct. 2669 (2021)..........................................15

*Osmon v. United States*,
    2020 WL 9047166 (W.D.N.C. Dec. 7, 2020)..........................13

*Pietrowski v. Town of Dibble*,
    134 F.3d 1006 (10th Cir. 1998) ..................................................9

*Revock v. Cowpet Bay W. Condo.*,
    853 F.3d 96 (3d Cir. 2017) ...........................................................5

*Roberston v. Wegmann*,
    436 U.S. 584 (1978)........................................................ 1, 4, 8, 9

*Schonewolf v. Waste Mgmt, Inc.*,
    2018 WL 1381133 (M.D. Pa. Mar. 9, 2018) ...........................5, 6

*Smith v. Dep't of Human Servs., State of Okl.*,
    876 F.2d 832 (10th Cir. 1989) .....................................................6

*Tun-Cos v. Perrotte*,
    922 F.3d 514 (4th Cir. 2019) .....................................................13

*U.S. v. NEC Corp.*,
    11 F.3d 136 (11th Cir. 1993) .......................................................6

*Vanderklok v. United States*,
    868 F.3d 189 (3d Cir. 2017) ........................................ 13, 14, 15, 16

*Wilke v. Robbins,*
  551 U.S. 537 (2007) ........................................................................... 10, 13

*Wood v. Moss,*
  572 U.S. 744 (2014) ..............................................................................11

*Ziglar v. Abbasi,*
  137 S. Ct. 1843 (2017) ...................................... 2, 10, 11, 12, 13, 14, 15

## *Federal Statutes*

42 U.S.C. § 1988 ...................................................................................4

## *State Statutes*

20 Pa. Cons. Stat. § 3371 .....................................................................4

Tex. Civ. Prac. & Rem. Code § 71.021 ................................................3

## *Federal Rules*

Fed. R. Civ. P. 25(a) .............................................................................1

## *Other Authorities*

Fed. Prac. & Proc. Civ. § 1954 .............................................................2

The Estate of William Fuller ("Estate") opposes Plaintiff's motion to substitute it as a party defendant in place of original defendant William Fuller, (Dkt. No. 165), who is now deceased.[1]  First, Rule 25 prohibits substitution where, as here, the party's death extinguished the claim.  Second, a *Bivens* remedy does not exist against an estate, and this Court should not create one here.

## I.    *Bivens* Claims Do Not Survive Death of the Defendant

Rule 25 permits, but does not require, the Court to substitute an estate "[i]f a party dies *and the claim is not extinguished*." Fed. R. Civ. P. 25(a) (emphasis added). Because the Court does not have discretion to substitute an estate for a claim that abates upon a party's death, "[t]he threshold inquiry when analyzing a motion to substitute is whether the underlying claim is extinguished." *Cuoco v. Palisades Collection, LLC*, 2014 WL 956229, at * 3 (D.N.J. Mar. 11, 2014).  Rule 25 does not address that question, as it "simply describes the *manner* in which parties are to be substituted in federal court once it is determined that the applicable substantive law allows the action to survive a party's death."  *Id.* (emphasis in original) (quoting *Robertson v. Wegmann*, 436 U.S. 584, 587 (1978)).

---

[1] The undersigned files this brief in his capacity as counsel for the Estate.  Because the Estate is not – and should not become – a formal party to this case, the U.S. Attorney's Office electronically filed this brief on behalf of docketed party William Fuller.

1

## A.    Federal Law Governs the Survivability of Federal Claims

*Bivens* claims are judicially created causes of action implied directly under the Federal Constitution and in the absence of statutory authority. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). Because "*Bivens* actions are a creation of federal law …., the question whether respondent's action survived [deceased plaintiff's] death is a question of federal law." *Carlson v. Green*, 446 U.S. 14, 22 (1980). The *Carlson* Court's ruling that federal law governs survival of *Bivens* claims comports with the general rule that, while federal courts sitting in diversity may turn to state survival law, "[i]f the right of action is federally created, federal law controls on the survival of the action." 7C Fed. Prac. & Proc. Civ. § 1954 (3d ed.); *see also Cuoco*, 2014 WL 956229, at *4 ("[C]ourts have looked to federal common law to determine whether an action created by federal statute survives the death of a party." (quoting *Acebal v. United States*, 60 Fed. Cl. 551, 555 (Fed. Cl. 2004))). As *Bivens* claims are the product of federal law and Congress has neither authorized such claims nor enacted a universal law of survivorship, this Court must turn to federal common law to determine whether the underlying claim is extinguished.

This case, in particular, highlights the reason federal, rather than state, law governs this inquiry. Indeed, it makes little sense to apply state survivability law to Plaintiff's *Bivens* claims because states have no demonstrable interest in applying their laws in the federal prison context. As the Supreme Court noted, "there is no

reason to expect that any given prisoner will have any ties to the State in which he is incarcerated, and, therefore the state will have little interest in having its law applied to that prisoner." *Carlson*, 446 U.S. at 24, n. 11. But even if courts set out to identify *a* state's law to apply, often they will find themselves with no clear answer as to *which* state. That is, again, particularly true in the federal prison context, given that the BOP chooses where to incarcerate inmates based on factors unrelated to the inmate's own personal contacts with a particular state. Here, of course, Donshay Sayles' contact to Pennsylvania is limited to the approximately four months that he was involuntarily incarcerated at USP Canaan.[2] By contrast, Sayles was a Texas resident at the time of his conviction, he was convicted in Texas for conduct committed in Texas, and he now resides in Texas. Janice Shorter is also a Texas resident.

Though Texas has a significantly more demonstrable interest in having its law applied when compared to Pennsylvania, it is nevertheless true that there are at least two States with some connection to this case. Complicating matters, there is an apparent conflict between the two. *Compare* Tex. Civ. Prac. & Rem. Code § 71.021 (providing for survival only for a claims "for personal injury to the health, reputation,

---

[2] The fact that Sayles suffered his injury in Pennsylvania should not factor significantly into the Court's analysis. As the *Carlson* Court pointed out, BOP officials "have the power to transfer prisoners to facilities in any one of several states which may have different rules governing survivorship or other aspects of the case . . .." *Carlson*, 446 U.S. at 24, n.11.

3

or person of an injured person") *with* 20 Pa. Cons. Stat. § 3371 ("All causes of action or proceedings, real or personal, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants.").  Not only would applying state law invite unnecessary conflicts of law within individual cases like this one, but doing so also would allow disparate outcomes in *Bivens* cases depending on which state has the most significant contacts.  Such inconsistency is undesirable and contrary to the Supreme Court's plain direction to apply *federal* common law to the survivability of *federal* claims.

Plaintiff may rely on cases ruling that the survival of § 1983 claims is governed by state law in an attempt to avoid the application of federal common law to the issue.  *See Robertson v. Wegman*, 436 U.S. 584 (1978); *see also Giles v. Campell*, 698 F.3d 153 (3d Cir. 2012).  Such reliance would be misplaced because the Supreme Court has already distinguished cases involving survivability of § 1983 claims from the general rule that federal law governs survivability of federally created claims.  First, Congress statutorily provided that state law applies to § 1983 claims.  *See* 42 U.S.C. § 1988.  The same is not true here, as Congress has never codified a *Bivens* cause of action and did not direct courts to apply state law to them. Second, while defendants in § 1983 claims are state actors acting under color of state law, "*Bivens* defendants are federal officials brought into federal court for violating the Federal Constitution."  *Carlson*, 446 U.S. at 24 n. 11.  As a result, "[n] o state

4

interests are implicated by applying purely federal law to them." *Id.*  Therefore,
[w]hile it makes some sense to allow aspects of § 1983 litigation to vary according
to the laws of the States under whose authority § 1983 defendants work, federal
officials have no similar claim to be bound only by the State in which they happen
to work." *Id.*   When deciding whether Plaintiff's claims survive Fuller's death,
therefore, this Court must apply federal law.

> ### B.   Under Federal Law, *Bivens* Claims Do Not Survive the Death of a Defendant Because They Are Penal, Not Remedial

Federal courts have fashioned a federal common law rule for federal claims
where there is uncertainty as to whether they survive the death of a party.  Under this
rule of survivorship, courts focus on the federal claim's purpose – remedial claims
survive while penal claims do not.  *See, e.g.*, *Revock v. Cowpet Bay W. Condo.*, 853
F.3d 96, 109 (3d Cir. 2017) ("[W]e will follow the weight of authority, which applies
the pre-*Erie Railroad Co. v. Tompkins* common law rule of survival, under which
remedial claims survive, but penal claims do not."); *see also Schonewolf v. Waste
Mgmt, Inc.*, 2018 WL 1381133, at *4, 6 (M.D. Pa. Mar. 9, 2018) ("Under federal
common law, remedial claims survive the death of a plaintiff, whereas claims that
are penal in nature are terminated."); *see also Green ex rel. Estate of Green v. City
of Welcn*, 467 F. Supp. 2d 656, 665 (S.D. W.Va. 2006) ("A remedial action is one
that compensates an individual for specific harm suffered, while a penal action
imposes damages upon the defendant for a general wrong to the public." (quoting

*U.S. v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1993)).  Applying this rule here, the claims against Fuller abated at his passing.

Deterrence is the core purpose of *Bivens*.  In fact, the Supreme Court went so far as to say that *Bivens* "is concerned *solely* with deterring the unconstitutional acts of individual officers." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71 (2001) (emphasis added); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 485 (1994) ("It must be remembered that the purpose of *Bivens* is to *deter the officer*." (emphasis in original)).  Deterrence serves a penal, not a remedial purpose.  *Smith v. Dep't of Human Servs., State of Okl.*, 876 F.2d 832, 836 (10th Cir. 1989) (explaining that penal actions, as opposed to remedial actions, serve "the purpose of punishment, and to deter others from offending in like manner" (quoting *Huntington v. Attrill*, 146 U.S. 657, 668 (1892))); *Schonewolf*, 2018 WL 1381133. at *6 ("Damages that are penal in nature are awarded to punish the defendant for its conduct and *to deter it and others from similar conduct in the future*." (emphasis added)).  Thus, *Bivens* claims are a means of deterring federal officials from future unconstitutional conduct. *Cf. Meyer*, 510 U.S. at 485 (explaining the rationale for not expanding *Bivens* to claims against federal agencies because otherwise claimants would "bypass" actions against individual officers and defeat the deterrence rationale of *Bivens*); *Malekso*, 534 U.S. at 69 (explaining the deterrent effect of *Bivens* would be lost if such a claim could be brought against an agency instead of an individual).

Because *Bivens* claims are penal, and because penal claims do not survive under federal common law, it follows that the *Bivens* claim against Fuller abated upon his death.  As this Court has no discretion to substitute an Estate for a deceased defendant where the claim abates on death, the Court should deny the motion to substitute.

### C. *Carlson* Does Not Stand for the Proposition that *Bivens* Claims Survive the Death of Defendant

The Estate is aware of no cases standing for the proposition that a ***Bivens* claim survives a *defendant's* death**.  Plaintiff, therefore, may rely on the Supreme Court's holding in *Carlson* to argue that the claims against Fuller should survive.  In *Carlson*, however, the Court ruled only that the *Bivens* claim survived a *plaintiff*, the death of whom the *Bivens* defendants caused through their alleged unconstitutional conduct.  Recognizing the limitation of its holding, the Court expressly left open the question of whether a *Bivens* claim would survive the death of, for example, a plaintiff whose death was *not* a result of the alleged constitutional violation.  *Id*. at 24, n. 11.  Here, of course, the relevant death is not of the plaintiff at all, but of an individual defendant, making the current factual scenario even less akin to the one in *Carlson*.

Thus, while this Court should follow *Carlson*'s rule that federal common law determines whether federal claims abate upon death, the Supreme Court's answer to that ultimate question in *Carlson* has no impact on the same ultimate

question here.  *See Haggard v. Stevens*, 683 F.3d 714, 716 (6th Cir. 2012) (recognizing *Carlson*'s limited application).    Indeed, the *Carlson* Court specifically explained how it was the specific, limited scenario of that case's facts that required survival of the *Bivens* claim, reasoning that "[o]therwise an official could know at the time he decided to act whether his intended victim's claim would survive," thereby creating perverse incentives for would-be defendants. *Carlson*, 446 U.S. at 25 n. 12.

Carlson also explicitly distinguished itself from – but did not overrule – *Robertson v. Wegmann*, 436 U.S. 584 (1978), wherein the Court held the § 1983 claims *did* abate at plaintiff's death.  The plaintiff's death in *Robertson*, however, did *not* result from the defendant's unconstitutional conduct.[3]  On those facts, the *Robertson* Court held that the claims extinguished upon the plaintiff's death because "the fact a particular action might abate" would not "adversely affect" the prevention of "official illegality, at least in situations in which there is no claim the illegality caused the plaintiff's death." 436 U.S. at 592.  In addition, albeit in the context of § 1988, the *Robertson* Court also determined that abatement was not "inconsistent with the Constitution and laws of the United States." *Id.* at 593.

---

[3] Although *Robertson* involved a suit under § 1983, the *Carlson* Court noted that claims under § 1983 and *Bivens* share the broad goal of official deterrence. *Carlson*, 446 U.S. at 25.

Outside of that specific *Carlson* scenario, it is unreasonable to believe that a government official will, at the time of his conduct, be influenced by survivorship law and the mere possibility that he may die before being held liable. *See*, *e.g.*, *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) ("[I]t is unreasonable to assume that a defendant's conduct will be influenced by the possibility that he or she may die before litigation is resolved."); *Haggard*, 683 F.3d at 717 ("The plaintiffs' uniform rule of survivorship would do virtually nothing to deter constitutional torts – because virtually nobody is more inclined to commit them based on the prospect that the actor might die and thus obtain immunity from suit."); *see also* *Robertson*, 436 U.S. at 592, 592 n.10 ("[T]o find even a marginal influence on behavior [of abatement]…one would have to make the rather farfetched assumptions that [an] official had both the desire and the ability deliberately to select as victims only those persons who would die before conclusion of the [] suit.").

Taken together, therefore, the *Robertson* and *Carlson* decisions emphasize that deterring officials from unconstitutional conduct – the goal of both *Bivens* and § 1983 – is achieved by the very prospect of individual damages suits. *Robertson*, 436 U.S. at 592 ("A state official contemplating illegal activity must always be prepared to face the prospect of a § 1983 action being filed against him."); *Carlson*, 446 U.S. at 25 ("A federal official contemplating unconstitutional

conduct similarly must be prepared to face the prospect of a *Bivens* action."). Aside from deprivations resulting in the plaintiff's death, therefore, *Bivens* claims abate upon a party's death.

*     *     *

Federal common law extinguishes a *Bivens* claim against a defendant who dies during the pendency of the action. Accordingly, Rule 25 prohibits this Court from substituting the Estate for the deceased defendant. The Court, therefore, should deny Plaintiff's motion to substitute the Estate.

## II.   There Is No *Bivens* Remedy Against Estates, and the Court Should Not Create One Here

Unlike most claims, a *Bivens* claim is a judicial creation that does not exist automatically in every case, and this Court should not engage in the now "disfavored judicial activity" of implying a *Bivens* remedy in the absence of congressional action. *Abbasi*, 137 S. Ct. at 1857. Recognizing a *Bivens* remedy in a particular case must "represent a judgment about the best way to implement a constitutional guarantee." *Wilke v. Robbins*, 551 U.S. 537, 550 (2007).

The Supreme Court first recognized a damages remedy against individual defendant officers acting under color of federal authority in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971). *Bivens* involved *Federal Bureau of Narcotics* agents' warrantless search and seizure. *Id.* at 397. Since then, the Supreme Court has extended *Bivens* in only two additional

10

contexts: a Fifth Amendment sex discrimination claim against a *congressman* for firing his female secretary, *Davis v. Passman*, 442 U.S. 228 (1979); and an Eighth Amendment claim against *prison officials* for their failure to provide emergency medical care to an inmate, *Carlson v. Green*, 446 U.S. 14 (1980).

In the more than 40 years since, the Supreme Court has refused to recognize a *Bivens* remedy in any other context or against any *other category of defendant* and recently explained "the analysis in [*Bivens*, *Davis*, and *Carlson*] might have been different if they were decided today." *Abbasi*, 137 S. Ct. 1856-57. Thus, the antecedent question before reaching the merits of constitutional claims against federal officials is whether a personal damages remedy is available at all. *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006  (2017) (quoting *Wood v. Moss*, 572 U.S. 744, 757 (2014)).

To answer that question, this Court must first determine whether the instant matter presents a context *or* category of defendant that is meaningfully different from *Bivens*, *Davis*, or *Carlson*. *Abbasi*, 137 S. Ct. at 1857 ("This is in accord with the Court's observation that it has consistently refused to extend *Bivens* to any new context *or new category of defendants*") (emphasis added) (quoting *Malesko*, 534 U.S. at 68). If it does, this Court must then consider whether "any alternative, existing process for protecting the [relevant] interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new freestanding remedy in

damages" as well as any additional "special factors counseling hesitation before authorizing a new kind of federal action."  *Wilkie*, 551 U.S. at 550.

### A.   The Court Would Have to Create a *Bivens* Remedy Against a New Category of Defendant

Never has the Supreme Court recognized a *Bivens* remedy against a deceased defendant's estate.  To the contrary, the only three categories of defendants against which the Court has created *Bivens* claims are Federal Bureau of Narcotics agents in *Bivens*, a congressman in *Davis*, and prison officials in *Carlson*.  The Estate does not fall into any of these three recognized categories of *Bivens* Defendants.  Recognizing a *Bivens* action against the Estate, therefore, would require extending *Bivens* to a new category of defendants.

The Estate is unaware of a single federal case specifically holding that a *Bivens* remedy exists against an estate in the wake of *Abbasi*.[4]  The Estate *is* aware, by contrast, of cases *declining* to create *Bivens* remedies against new categories of defendants.  *See*, *e.g.*, *Loumiet v. United States*, 948 F.3d 376, 382 (D.C. Cir. 2020)

---

[4] As the other *Bivens* Defendants previously argued, the nature of Plaintiff's *Bivens* claims all present new contexts and the Court should not allow those claims to proceed against the Estate on that basis alone.  *See* Dkt. No. 52.  That is, all of the *Bivens* claims arise in contexts never recognized by the Supreme Court.  Though the Estate adopts those arguments, this Court has rejected those arguments already.  *See* Dkt. No. 89.  The Estate, therefore – while preserving those arguments previously made by the *Bivens* Defendants and rejected by this Court – does not set them out separately here.  Instead, the argument the Estate makes now – that a *Bivens* claim against it would involve **a new category of defendant** – is unique to it and is an issue the Court has not previously considered.

(officials from the Office of the Comptroller of the Currency); *Tun-Cos v. Perrotte*, 922 F.3d 514, 525 (4th Cir. 2019) (ICE agents); *Drewniak v. U.S. Customs and Border Protection*, 2021 WL 1318028, *7 (D.N.H. Apr. 8, 2021) (Border Patrol agents); *Osmon v. United States*, 2020 WL 9047166, *8 (W.D.N.C. Dec. 7, 2020) (TSA agents).

The fact that Plaintiff proposes to maintain *Bivens* claims against the estate of a deceased defendant presents a new context and category of defendant. The Court, therefore, now must decide whether it will chart new waters and create a new *Bivens* remedy – a "disfavored" outcome. *Abbasi*, 137 S. Ct. at 1857. To do that, the Court first should "question whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilke*, 551 U.S. at 550. "But even in the absence of an alternative" process, the court still must consider whether "any special factors counsel[] hesitation before authorizing a new kind of federal litigation." *Id*.

**B.    Alternative Processes, Including Those Explicitly Authorized by Congress, Exist to Provide Redress for Plaintiff's Claim**

While this Court may decline to extend *Bivens* even in the absence of an alternative judicial remedy, *see Vanderklok v. United States*, 868 F.3d 189, 204-05 (3d Cir. 2017), the fact that Plaintiff had other processes available counsels strongly against extending *Bivens*. "If there is an alternative remedial structure present in a

13

certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Abbasi*, 137 S. Ct. at 1863 ("[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not.").

Here, alternative, existing processes exist which counsel against the Court creating *Bivens* remedies.  First, Plaintiff could bring – and has brought – claims under the FTCA.  *See Vanderklok*, 868 F.3d at 203-05 (acknowledging that the FTCA can be an alternative process).[5]  Second – and understanding that alternative remedies and a potential *Bivens* remedy "need not be perfectly congruent," *Minneci v. Pollard*, 565 U.S. 118, 129 (2012) – Plaintiff had additional alternative existing remedies against Fuller individually because he also could have brought claims under Pennsylvania state law to the extent he claimed that Fuller's allegedly unconstitutional actions placed him outside the scope of his federal employment. *See, e.g.*, *Vanderklok*, 868 F.3d at 204 ("[T]here can be a state law remedy against the [federal actor] when the … employee  acted outside the scope of employment."). Plaintiff, however, chose to pursue a *Bivens* cause of action and, therefore, must be constrained by the limitations of such a claim.

---

[5] While courts have historically considered the FTCA, standing alone, insufficient to preclude a *Bivens* remedy, *Carlson*, 446 U.S. at 23; *Bistrian v. Levi*, 912 F.3d 79, 92 (3d Cir. 2018), *Vanderklok* makes plain that a court may look to the FTCA in combination with other factors to refuse to imply a *Bivens* remedy to a new context.

That Plaintiff has at least one alternative process available to him, without more, is sufficient basis not to expand *Bivens* to this new context. *Abbasi*, 137 S. Ct. at 1863 ("[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not."); *see also Malesko*, 534 U.S. at 70 (*Bivens* actions "provide a cause of action for a plaintiff who lacked *any alternative remedy* for harms caused by an individual officer's unconstitutional conduct"); *Hernandez v. Mesa*, 140 S. Ct. 735, 748 (2020) (relying on the FTCA in determining Congress would not want to imply a *Bivens* remedy in excessive force claim); *Minneci*, 565 U.S. at 129 (discussing state law tort principles as alternative remedies in declining to extend *Bivens*); *Oliva v. Nivar*, 973 F.3d 438, 444 (5th Cir. 2020) (finding the FTCA alone was an alternative remedial scheme sufficient to foreclose *Bivens* excessive force claims at VA facility), *cert. denied*, 141 S. Ct. 2669 (2021). Because there is an alternative process available, this the Court should not create a new *Bivens* remedy.

## C.    Special Factors Counsel Hesitation

Even where an alternative process does not exist – though it does here – still courts should refrain from implying a new *Bivens* remedy where special factors counsel against such expansion. *Vanderklok*, 868 F.3d at 205 ("Although it is possible that no alternative remedy exists for [the plaintiff], that does not conclude our analysis because, even in the absence of an alternative, a *Bivens* remedy is a subject of judgment." (internal quotations omitted) (quoting *Wilkie*, 551 U.S. at

550)).  True to this principle, the Third Circuit in *Vanderklok* refused to imply a *Bivens* First Amendment retaliation claim even though there was *no alternative process* available to the plaintiff.  *Vanderklok*, 868 F.3d at 199.  Special factors here similarly preclude expansion of *Bivens* remedies to deceased defendants' estates.

Extending *Bivens* beyond a federal official to an entity created and defined by state law would shift unfairly the burden of any monetary judgment from the acting official to his or her innocent family members.  Such a *Bivens* remedy also would allow a plaintiff to burden a deceased official's family with protracted litigation, precluding them from closing the estate during the pendency of the civil action and depriving them of closure the entire time.

To demonstrate, attached to this response is the Declaration of Kim Giombetti, Esquire ("Declaration"), counsel for the Estate in the state probate proceedings. Attorney Giombetti explains that Fuller's only legal heir is his minor son, and that the only significant estate asset is a personal residence encumbered by approximately $100,000 in mortgage liens.  *Id*., ¶¶ 3-4.  Amy Pratt, the Estate's Administrator and Fuller's fiancé, is currently living at the residence with Fuller's minor child and is paying voluntarily the mortgage on that property from her personal assets to avoid a default, even though she is not a signatory to the mortgage or promissory note.  *Id*., ¶¶ 2-3, 4.  While Ms. Pratt is contemplating a judicially approved purchase of that property, Attorney Giombetti explains that the Estate

could not make a distribution of any resulting sale proceeds to Fuller's son should the Estate become a party to these proceedings and the case continues. *Id*., ¶ 5. Nor could the Estate close should it become a party to this suit. *Id*., ¶ 7. Adding insult to these injuries, the longer the Estate is forced to remain open, the more costs and expenses it will incur, which will further drain the already sparse assets that Attorney Giombetti expects to be left for distribution. *Id*., ¶ 8.

Moreover, the Estate would be at a distinct disadvantage in its ability to defend a claim against a deceased federal official. *Bivens* claims, by nature, are inherently personal to the deceased defendant, who is no longer available to tell his or her side of events. And the loss of that evidence in the form of the defendant's firsthand testimony – particularly where, as here, the decedent's version of events was never memorialized in sworn testimony – would unfairly prejudice an estate's ability to defend such claims to the detriment of the decedent's heirs. That legal hand-tying only increases the unfair prejudice to the innocent heirs in the wake of their loved one's death.

Finally, and as argued above, creating a remedy here would do nothing to advance the core purpose of *Bivens* claims in the first place. That is, the Supreme Court has made clear that *Bivens* "is concerned *solely* with deterring the unconstitutional acts of individual officers." *Malesko*, 534 U.S. at 71 (emphasis added). Yet, one cannot reasonably expect that advanced knowledge that a *Bivens*

claim would abate upon a federal official's death would compromise *Bivens*' deterrent value.  To the contrary, the threat of an individual liability claim brought against an official while living provides ample deterrence not to violate another's constitutional rights.  Thus, because expansion of the remedy in this context would do nothing to advance the core purpose of *Bivens*, the Court should hesitate to do so.

The presence of these alternative existing processes and other special factors, taken together, counsels decidedly against inferring a *Bivens* remedy in the new context presented here.  *See Chappell v. Wallace*, 462 U.S. 296, 304 (1983) (considering special factors both alone and in combination).  Accordingly, this Court should decline to extend *Bivens* to this case and decline to substitute the Estate in place of the late Mr. Fuller.

## **CONCLUSION**

Applying the federal common law rule of survival, the *Bivens* claim against Fuller abated upon his death.  Rule 25 plainly prohibits substitution under these circumstances.  Alternatively, the Estate is a new category of *Bivens* defendant, and

subjecting it to a *Bivens* claim would require this Court to create a *Bivens* remedy, a

step it should not take given that special factors counsel hesitation.

                        Respectfully submitted,

                        JOHN C. GURGANUS
                        United States Attorney

                        /s/ Richard D. Euliss
                        Richard D. Euliss (DC 999166)
                        Harlan W. Glasser (PA 312148)
                        Assistant United States Attorneys
                        228 Walnut Street
                        Harrisburg, PA 17101
                        (717) 221-4462
                        (717) 919-6137
                        Harlan.Glasser@usdoj.gov
                        Richard.D.Euliss@usdoj.gov

Dated:   February 7, 2022

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JANICE SHORTER, PERSONAL      :
REPRESENTATIVE AND LEGAL      :       NO. 3:16-CV-01973
GUARDIAN FOR DONSHAY SAYLES,  :
                              :
        Plaintiff,            :
                              :
                              :       (Judge Mannion)
        v.                    :       (Magistrate Judge Arbuckle)
                              :
CHARLES E. SAMUELS, JR., ET AL.  :    Electronically Filed
                              :
        Defendants.           :

## CERTIFICATE OF SERVICE VIA ELECTRONIC CASE FILING (ECF)

The undersigned hereby certifies that he is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.  That on February 7, 2022, she caused to be served a copy of the attached

## BRIEF IN OPPOSITION TO MOTION FOR
## SUBSTITUTION OF DEFENDANT WILLIAM FULLER

via the Court's Electronic Case Filing System ("ECF") and that the Addressee(s) listed below are filing users under the ECF system.

Addressees:

Jennifer J. Tobin, Esquire @ jtobin0913@gmail.com
Christopher Heavens, Esquire @ Chris@heavenslawfirm.com
Jay T. McCamic, Esquire @ jay@mspmlaw.com
Christopher J. Gagin @ Chris@mspmlaw.com
Walter P. Zivley, Jr. @ Pzivley@cmzlaw.net

                        /s/ Michele E. Lincalis
                        Michele E. Lincalis
                        Supv. Paralegal Specialist

20