# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JANICE SHORTER, PERSONAL REPRESENTATIVE AND LEGAL GUARDIAN FOR DONSHAY SAYLES,** | : : : : | NO. 3:16-CV-01973 |
| **Plaintiff,** | : : | |
| v. | : : : | **(Judge Mannion)** **(Magistrate Judge Arbuckle)** |
| **CHARLES E. SAMUELS, JR., ET AL.** | : : | **Electronically Filed** |
| **Defendants.** | : | |

### SUPPLEMENTAL BRIEF IN SUPPORT OF *BIVENS* DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In accordance with the Court's order of May 10, 2022, (Dkt. No. 195), the *Bivens* Defendants submit the following supplemental brief in support of their motion for summary judgment pursuant to Fed. R. Civ. P. 56. *See* Dkt. No. 95.

### INTRODUCTION

On May 16, 2014, cellmates Donshay Sayles and Joseph Wing were involved in a physical altercation, leading to significant physical injuries to Sayles. *See* Statement of Material Facts, Dkt. No. 100, ("SMF") ¶ 2. Janice Shorter, in her capacity as Sayles' personal representative, filed suit against the *Bivens* Defendants more than four months *beyond* the two-year anniversary of the May 16, 2014, altercation. Plaintiff contends that she nevertheless timely filed this suit because it was not until she heard Joseph Wing's comments at his January 15, 2015 sentencing

hearing that she was sufficiently on notice to trigger the two-year limitations period. *See* Dkt. No. 108 at 17. The factual record, however, shows that to be decidedly untrue. The *Bivens* Defendants explored most of that evidence in prior briefing in support of their motion for summary judgement. *See* Dkt. Nos. 99, 100, 100-1, & 111. Well after conclusion of that briefing, the *Bivens* Defendants learned about two new documents that further prove that Plaintiff had been on inquiry notice of her claims significantly longer than two years before initiating suit.

The first new document is a May 21, 2014, email authored by Plaintiff to the BOP in which she expressed "concern" that BOP staff celled Wing with Sayles as a form of harassment. *See* Supplemental Statement of Material Facts ("Supp. SMF") ¶ 1, Ex. K. The second new document is an August 21, 2014 letter (received on August 26, 2014) from Joseph Wing to Plaintiff's counsel, Christopher Heavens, in which Wing contends that BOP staff "actually orchestrated" the cell assignment knowing that it would result in Sayles' injury. *Id.* ¶ 2, Ex. L. In this supplemental submission, the *Bivens* Defendants describe these documents in greater detail, contextualize their relevance in the broader timeline, and explain why the overall factual record requires a finding that Shorter filed this suit more than two years after commencement of the limitations period.

## ARGUMENT

The Third Circuit explains that "the statute of limitations begins to run on the first date that the injured party possesses sufficient critical facts *to put him on notice* that a wrong has been committed and that he *need investigate* to determine whether he is entitled to redress." *Zeleznik v. United States*, 770 F.2d 20, 23 (3d Cir. 1985) (emphasis added).  Commencement of the limitations period is not delayed until a plaintiff has learned all, or even most, of the facts relevant to a prospective claim. Instead, even a mere "unrebutted *suspicion*" that another is responsible for an injury "is sufficient to start the clock." *Juday v. Merck & Co.*, 2017 WL 1374527, at *4 (E.D. Pa. Apr. 17, 2017) (quoting *Debiec v. Cabot Corp.*, 352 F.3d 117, 132 (3d Cir. 2003) (emphasis added)).  In other words, the limitations period tolls only until a prospective plaintiff's need to investigate arises, *not* until a prospective plaintiff pursues and completes that investigation.

I. **The Limitations Period Commenced More Than Two Years Before Shorter Filed Suit**

Plaintiff filed suit on September 27, 2016.  Therefore, if Plaintiff were "on notice" of a "need to investigate" more than two years before that – that is, any time before September 27, **2014** – then it follows that she filed her *Bivens* claims beyond the statute of limitations.  This reality dooms Plaintiff's *Bivens* claims, as the factual record is replete with evidence proving that in the days, weeks, and months prior

3

September 27, 2014, Shorter not only was on *notice* of her need to investigate, but had already *commenced* her investigation. There is no legal excuse, therefore, for waiting until September 27, 2016, to file this suit. Consider the following evidentiary highlights, which includes several critical admissions by Shorter or her representative made contemporaneous to the time preceding September 27, 2014:

- **May 7, 2014**: Sayles writes to Shorter informing her about incident reports issued to him by Defendant Sudul and shares his belief that "what they did was all set up that by that [Lieutenant] Dude Sudul. I knew he was going to find a way to mess over me." SMF, Ex. A.

- **May 14, 2014**: Sayles writes again to Shorter informing her that Sayles has "a complaint pending in the region as well on that Lt. Sudal [sic] . . . I think when dude find out he may start messin with me tuff. I don't know. I'm ready for whatever." *Id.*, Ex. C.

- **May 16, 2014**: The BOP places Wing and Sayles in the same cell and they start fighting one another, leading to Sayles' injuries at issue in this case. *Id.* ¶¶1-3.

- **May 19, 2014**: The BOP notifies Shorter about Sayles' injuries. Shorter suspects at the time that the BOP waited three days to notify her in the unspoken hope that Sayles first would succumb to his injuries, which –

4

according to Shorter's thinking at the time – would help them cover up staff's involvement. *Id.* ¶15.

- **May 21, 2014**: This is the first of two new pieces of evidence. Five days after Sayles' injury (and two days after being notified about the same), Shorter writes an email to the BOP expressing "concern[] that Donshay was being harassed by the guards and Lieutenant as well as fellow prisoners. How does someone get choked to death if they are supposed to be in protective custody? . . . I received a letter that he was trying to stay in confinement to PREVENT from being hurt by those threatening him and yet he still wound up hurt and is on life support." Shorter declares that Sayles was injured only because BOP staff "***failed him*** while he was supposed to be safe." Supp. SMF, Ex. K (emphasis added).

- **June 14, 2014**: Shorter formally hires attorney-of-record Christopher Heavens. SMF ¶23.

- **June 25, 2014**: Shorter writes to the BOP recounting Sayles' May 14, 2014, letter and explaining that "lieutenant Sudal [sic] told Donshay that he was going to make his life miserable[.]" Shorter describes the complaint that Sayles had filed against Sudul and Sayles' fear about what "what was going to happen when the lieutenant find [sic] out about it." Shorter is suspicious that "[t]wo

5

days later on May 16, 2014 is when the incident happened to my son[.]" Shorter articulates the following impression that she held at the time: "***I do believe in my heart that Lieutenant Sudal [sic] had something to do with it. For that reason I would like a thorough investigation***." *Id.*, ¶21, Ex. D (emphasis added).

- **July 28, 2014**: Heavens writes to the U.S. Attorney's Office on Shorter's behalf describing Shorter's "serious question as to why USP Canaan would place Mr. Wing in a SHU cell with Mr. Sayles." Heavens further articulates "***a legitimate suspicion by the Sayles family that USP Canaan may have been involved*** in placing Mr. Wing in Mr. Sayles [sic] SHU cell ***for the specific purpose of attacking him***." *Id.*, Ex. E (emphasis added).

- **August 26, 2014**: This is the second new piece of evidence. Heavens receives a letter from Wing alleging that "[t]he BOP was beyond negligent[;] ***they actually orchestrated all that occurred***, and I can prove it ten times over because they fucked up and left a trail. It will blow your mind. Trust me, ***compared to what really happened, negligence would make them appear professional and competent***. I can give you their heads on a platter." Supp. SMF, Ex. L (emphasis added).

6

- **August 28, 2014**:  Two days after receiving Wing's letter, Heavens writes again to the U.S. Attorney's Office, this time expressing Shorter's concern "***that USP Canaan is going to attempt to cover-up any misfeasance and/or malfeasance in connection with the attack on Donshay Sayles***." SMF, Ex. F (emphasis added).

Any one of these facts, standing alone, is sufficient to demonstrate that – more than two years before filing suit – Shorter not only was on notice of her need to investigate (which is all that is legally required to commence the limitations period), but that she had already taken affirmative steps to investigate in the form of hiring a lawyer and sending letters that expressly articulate Shorter's suspicion that the *Bivens* Defendants were somehow responsible for the injuries to Sayles.  The only possible explanation for Shorter's actions and behavior is that she believed BOP staff were responsible and she intended to hold them accountable.  Under governing law, this means that the statute of limitations had begun to run.

## II.   The Limitations Period Started Before the January 15, 2015 Hearing

Plaintiff would have the Court disregard all the facts about which she unequivocally knew before September 27, 2014, arguing instead that "[t]he first time she could have learned this fact of staff involvement was during the January 15, 2015 hearing." Dkt. No. 108 at 17.  But that argument is belied by the record.  Indeed,

7

*more than four months before* January 15, 2015, Heavens received a letter from Wing contending that the BOP had "actually orchestrated all that occurred[;]" that "compared to what really happened, negligence would make them appear professional and competent[;]" and that he could "give [Heavens] their heads on a platter." It contradicts the evidence, therefore, for Plaintiff to suggest that January 15, 2015, was the first time she learned that Wing had implicated BOP staff.

     Even setting that aside, there is a faulty premise underlying this argument: that the law required Shorter's awareness of the facts and allegations ostensibly learned for the first time on January 15, 2015, in order to trigger the limitations period. This is incorrect. Rather than familiarity with *all* – or even *most* – key facts and allegations, the law requires only that a prospective plaintiff be apprised of *enough* facts to put them on inquiry notice. In other words, a prospective plaintiff must be aware only of a need to investigate. After filing suit, such prospective plaintiff can avail herself of the discovery process to fill remaining information gaps.

     Here, contemporaneous admissions made by Shorter (memorialized in multiple pieces of correspondence) unequivocally reveal that well before September 27, 2014, she had already identified a need to investigate whether prison officials were responsible for Sayles' injuries. In fact, more than identifying a need, she actually started investigating by hiring an attorney, contacting government

8

agencies, and communicating with the assailant. And those efforts bore fruit, as she received a written statement from the assailant himself advising that the "BOP … actually orchestrated all that occurred" and offering "their heads on a platter." By the time of the January 15, 2015, hearing, therefore, Shorter was already on inquiry notice of this supposed staff involvement and had already begun investigating. Because she had formed a suspicion that BOP staff was involved in Sayles' injuries months before January 15, 2015, the limitations period was already underway by that point.

## III.   Equitable Tolling/Fraudulent Concealment Does Not Apply

Plaintiff alternatively argues that the doctrine of fraudulent concealment had equitably tolled the limitations period. This is incorrect. *First*, Shorter can only argue that actors other than the *Bivens* Defendants (*e.g.*, the BOP, FBI, and the U.S. Attorney's Office) withheld from her certain facts. *See* Dkt. No. 108 at 15. She has not – and cannot – establish that any of the individual *Bivens* Defendants withheld anything from her. This is fatal, as "[t]he doctrine [of fraudulent concealment] is based on a theory of estoppel, and provides that ***the defendant*** may not invoke the statute of limitations, if through fraud or concealment, ***he*** causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts." *Fine v. Checcio*, 870 A.2d 850, 860 (Pa. 2005) (emphasis added). Plaintiff's

9

argument assumes that the Court can attribute to and hold against the *Bivens* Defendants the alleged withholding of information by **other** actors. Plaintiff provides no authority for this premise, and it contradicts the Pennsylvania Supreme Court's stated rationale for and articulation of the doctrine.

*Second*, even if she could show that the *Bivens* Defendants withheld information from her, still Shorter could not possibly show that any such concealment caused her "to relax [her] vigilance or deviate from [her] right of inquiry into the facts." *Fine*, 582 Pa. at 271. Shorter has repeatedly cast her behavior in the months preceding September 27, 2014, as that of a prospective plaintiff in relentless, diligent pursuit of the facts. *See* Dkt. No. 108 at 15. That description is accurate, as the record shows that during that time Shorter had written to the BOP, hired an attorney, twice wrote to the U.S. Attorney's Office, and communicated with Wing to gather more information about what transpired.

Because Shorter can show neither that the *Bivens* Defendants withheld anything from her nor that anyone else's withholding of information caused her to delay seeking redress, the doctrine of fraudulent concealment cannot apply. *See Juday v. Merck and Co.*, 2017 WL 1374527 at *4 (E.D. Pa. Apr. 17, 2017) (no tolling where "there is nothing before the court [proving] that [plaintiff] ever relied upon" defendant's statements).

10

## CONCLUSION

Because Shorter was on inquiry notice more than two years before filing suit, the *Bivens* claims are untimely and the Court should enter summary judgment.

Respectfully submitted,

JOHN C. GURGANUS
United States Attorney

s/ Richard D. Euliss
Richard D. Euliss (DC 999166)
Harlan W. Glasser (PA 312148)
Assistant United States Attorneys
228 Walnut Street, Suite 220
Harrisburg, PA 17108-1754
Tel: (717) 221-4482

Dated:    May 23, 2022       Richard.D.Euliss@usdoj.gov

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JANICE SHORTER, PERSONAL REPRESENTATIVE AND LEGAL GUARDIAN FOR DONSHAY SAYLES,** | : : : : | NO. 3:16-CV-01973 |
| **Plaintiff,** | : : | |
| v. | : : : | **(Judge Mannion)** **(Magistrate Judge Arbuckle)** |
| **CHARLES E. SAMUELS, JR., ET AL.** | : : | **Electronically Filed** |
| **Defendants.** | : | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers. That on May 23, 2022, she served a copy of the attached

## SUPPLEMENTAL BRIEF IN SUPPORT OF *BIVENS* DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

by electronic service pursuant to Local Rule 5.7 and Standing Order 05-6, & 12.2 to the following individual(s):

Jennifer J. Tobin, Esquire
Christopher J. Heavens, Esquire
Jay T. McCamic, Esquire
W. Perry Zivley, Jr., Esquire
Anthony I. Werner, Esquire

                                                s/ Cynthia Roman
                                                Cynthia Roman
                                                Supv. Paralegal Specialist